USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2184 ROBERT C. HURLBURT, Plaintiff, Appellant, v. MICHAEL J. CUNNINGHAM, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Martin F. Loughlin, Senior U.S. District Judge] __________________________ ____________________ Before Breyer, Chief Judge, ___________ Torruella and Cyr, Circuit Judges. ______________ ____________________ Robert C. Hurlburt on brief pro se. __________________ Jeffrey R. Howard, Attorney General, and Amy Vorenberg, Assistant _________________ _____________ Attorney General, on brief for appellees. ____________________ May 26, 1993 ____________________ Per Curiam. After a jury trial in a New Hampshire __________ superior court, Robert Hurlburt was convicted of being a felon in possession of a firearm in violation of state law, and sentenced to an extended term of 7 1/2 to 15 years by the trial judge (Nadeau, J.). The New Hampshire Supreme Court reversed his conviction because of an erroneous evidentiary ruling. See State v. Hurlburt, 132 N.H. 674, 569 A.2d 1306, _________ ________ 1306-07 (1990). A jury trial was had before a different state court judge (Temple, J.). The jury again convicted Hurlburt, but this time Judge Temple imposed an extended term of 10 to 30 years. The New Hampshire Supreme Court affirmed. See State v. Hurlburt, 135 N.H. 143, 603 A.2d 493 (1991), _________ ________ cert. denied, 112 S. Ct. 1770 (1992). Hurlburt then _____________ petitioned for a writ of habeas corpus under 28 U.S.C. 2254, which was denied. Hurlburt v. Cunningham, 802 F. Supp. ________ __________ 585 (D.N.H. 1992). We affirm. We need discuss here only one of the issues which Hurlburt raises in his appeal.1 He claims that his ____________________ 1. The remaining claims are meritless. First, Hurlburt argues that he did not voluntarily and knowingly waive his Miranda rights during a post-arrest interview. He bases this _______ claim primarily on an error in the transcript from his first trial. This matter was fully explored and correctly resolved at a suppression hearing before his second trial. Second, he claims that his failure to challenge the state's alleged failure to prove that he had been incarcerated twice previously on sentences of one year or more so as to subject him to enhanced sentencing under state law should be excused because of ineffective assistance of counsel. The sentencing transcript shows that Hurlburt himself made this precise argument to the court at sentencing, and so his failure to -2- increased sentence after retrial is unlawful under North _____ Carolina v. Pearce, 395 U.S. 711 (1969). In Pearce, the ________ ______ ______ Supreme Court found that imposing an increased sentence after retrial on a defendant who had successfully appealed a first conviction would violate due process of law if the increase were motivated by vindictiveness. It stated: Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. . . . In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal. Id. at 725-26. Essentially, Pearce established a ___ ______ "presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." United States v. Goodwin, 457 U.S. 368, 374 _____________ _______ (1982). ____________________ raise it in his direct appeal, at which he submitted a pro se ___ __ brief supplementing that of his appointed counsel, must have been intentional and is thus not attributable to ineffective assistance of counsel. Third, he suggests that he exhausted his state remedies on the issue whether the audiotape of the first trial should have been enhanced, but the record shows that he failed to raise this issue in his direct appeal. -3- The district court found that the Pearce ______ presumption applied even though a different judge had imposed the increased sentence.2 But it concluded that the judge's statement of reasons was sufficient to rebut the presumption. 802 F. Supp. at 594. Although the state appears to have argued below that the presumption should not apply, on appeal ____________________ 2. Although Pearce involved a case in which a different ______ judge imposed the harsher sentence after retrial, the Supreme Court has indicated that Pearce itself is to be interpreted ______ as establishing a presumption of vindictiveness only in cases involving a single sentencer. See Texas v. McCullough, 475 _________ __________ U.S. 134, 140 n.3 (1986). Our research indicates that decisions by the circuit courts of appeals after McCullough __________ have uniformly held that the Pearce presumption does not ______ apply to the two-sentencer situation. See Rock v. Zimmerman, ___ ____ _________ 959 F.2d 1237 (3d Cir.), cert. denied, 112 S. Ct. 3036 _____________ (1992); United States v. Perez, 904 F.2d 142 (2d Cir.), cert. _____________ _____ _____ denied, 498 U.S. 905 (1990), and cert. denied, 111 S. Ct. ______ ____________ 1085 (1991); Gauntlett v. Kelley, 849 F.2d 213 (6th Cir. _________ ______ 1988). Some earlier cases, however, applied the presumption where a different judge had imposed the more severe sentence. See, e.g., United States v. Whitley, 734 F.2d 994 (4th Cir. __________ _____________ _______ 1984), cert. denied, 474 U.S. 873 (1985); United States v. ____________ _____________ Floyd, 519 F.2d 1031 (5th Cir. 1975); but see Holloway v. _____ ________ ________ Lockhart, 754 F.2d 252 (8th Cir.), cert. denied, 474 U.S. 836 ________ ____________ (1985). In Mele v. Fitchburg District Court, 884 F.2d 5 (1st ____ ________________________ Cir. 1989), this court held that the Pearce presumption did ______ not apply where a judge imposed a more severe sentence after a jury trial than had been imposed by a different judge after a bench trial. We held that the bench trial in the two-tier Massachusetts system was analogous to a guilty plea, so that, under Alabama v. Smith, 490 U.S. 794 (1989), the presumption _______ _____ did not apply. We also commented that "in this case two different judges imposed sentence, showing even less likelihood of possible vindictiveness than in Smith, where _____ the same judge, after being found to be in error on appeal, was responsible for resentencing." Id. at 10. We expressly ___ stated, however, that we were not deciding that "whenever a ________ second judge is responsible for resentencing there should arise no presumption of vindictiveness. We are relying on this factor in light of the particular circumstances of this case." Id. n.4 (emphasis in original). ___ -4- it accepts the district court's reasoning as "legally sound and well supported" and urges this court instead to affirm on the ground that the presumption has been rebutted. Under these circumstances, and because we conclude that objective information in the record here would rebut any Pearce ______ presumption applied, we do not decide whether the presumption should apply whenever a different judge imposes a harsher sentence after retrial, but only assume for the sake of argument that it does. In imposing a sentence of 10 to 30 years on Hurlburt after his retrial, Judge Temple stated: Mr. Hurlburt, in view of your record that has been presented to me here today and by virtue of the two reports from the Department of Corrections, and what I observed and listened to during the trial as well, I think if there ever was a case that the maximum enhanced sentence would apply, this is it. Accordingly, the sentence in this case is that you are sentenced to the New Hampshire State Prison for an extended term pursuant to Chapter 651:6 for not more than 30 years, nor less than 10 years. In its decision, the district court focused on Judge Temple's reference to the two presentence reports, which contained a copy of Hurlburt's conviction for possessing the implements of escape. The conviction had been obtained after Hurlburt was originally sentenced by Judge Nadeau, but before his sentencing by Judge Temple. Acknowledging that Judge Temple did not specifically refer to the intervening conviction, the district court found nonetheless that Judge Temple's -5- reference to the reports met the requirement that an increased sentence be based on "objective information that affirmatively appears of record," that there was "no reason to believe that the conviction was not factored into the sentencing decision," and that therefore the Pearce ______ presumption had been rebutted. 802 F. Supp. at 595. In holding that the presumption had been rebutted, the district court relied on Wasman v. United States, 468 U.S. 559, 569-70 ______ _____________ (1984), which had held that a sentencing judge could consider a criminal conviction obtained between an original sentencing and a sentencing after retrial in imposing an increased sentence and that such consideration would "amply" rebut any presumption of vindictiveness. Hurlburt argues that Judge Temple's "bare allusion" to the presentence reports does not satisfy the requirement that he affirmatively state his reasons for imposing a more severe penalty than Judge Nadeau and that those reasons be based on objective information concerning identifiable conduct by Hurlburt. Clearly, it would have been preferable for Judge Temple to have mentioned the intervening conviction explicitly if he had relied on it to justify the sentence he imposed, especially if it were the sole justification proffered for the increased sentence. Here, however, we believe that his lack of precision does not render his statement of reasons inadequate under Pearce. At the outset, ______ -6- we note that, unlike Pearce, this is not a case in which the ______ state has offered no reasons at all for imposing an increased sentence. See Wasman, 468 U.S. at 565 (the presumption of __________ vindictiveness was unrebutted in Pearce because the state had ______ offered no reason at all to explain the increased sentence). Judge Temple did give reasons for imposing the sentence he did. Moreover, since Judge Temple was not the original sentencer, he cannot be expected to have explained precisely why the sentence he imposed was greater than the one imposed by Judge Nadeau -- to do so, he would have to have been privy to Judge Nadeau's thoughts at the time he imposed the lesser sentence.3 Finally, we think that focusing only on the ____________________ 3. Our point is illustrated by reference to the explanation given for an increased sentence by the trial judge in Wasman. ______ There, one judge had imposed both of the sentences in question, and had explained his decision to impose a harsher sentence after retrial as follows: "[W]hen I imposed sentence the first time, the only conviction on [petitioner's] record in this Court's eyes, . . . was failure to file income tax returns, nothing else. I did not consider then and I don't in other cases either, pending matters because that would result in a pyramiding of sentences. At this time, he comes before me with two convictions." 468 U.S. at 562. Since there is nothing in the record to show that Judge Temple could have known what motivated Judge Nadeau to impose the sentence he did, it is unrealistic to expect him to compare his and Judge Nadeau's motivations as precisely as did the judge in Wasman to explain why he ______ imposed a lengthier sentence than Judge Nadeau. The difficulty which, we imagine, a second sentencer would invariably have in explaining his motivation relative to the motivation of the original sentencer suggests one reason why the Pearce presumption may ultimately be confined to the one- ______ sentencer situation. The root of this problem in the two- sentencer context is, of course, the assumption that the second, harsher sentence represents an "increase" in the first sentence which must be explained if the presumption is -7- issue of the intervening conviction is too narrow an approach. Judge Temple's statement of reasons was broader. Altogether, he gave three reasons for imposing the sentence he did: (1) Hurlburt's "record" as "presented to [him]" at the sentencing hearing; (2) the two presentence reports; and (3) "what I observed and listened to during the trial." Our review of the sentencing transcript, which amplifies Judge Temple's abbreviated statement of reasons, convinces us that the district court's conclusion that the Pearce presumption has been rebutted was correct. First, ______ Judge Temple stated that he relied on both presentence reports in imposing sentence on Hurlburt. During the sentencing hearing, Judge Temple also stated that he had read both of the reports. The updated report contains an assessment of Hurlburt's prospects for rehabilitation, an issue about which the first report (the only report available to Judge Nadeau) is silent. Based on an interview conducted after the second trial, the updated report recites instances in which Hurlburt gave the probation officer inaccurate or misleading information. Thus, the updated report indicated that, even after his second conviction, Hurlburt was ____________________ to be rebutted, whereas in reality the differing sentence may simply represent the different sentencing perspective which a different judge brings to bear on a given sentencing situation. Compare Texas v. McCullough, 475 U.S. 134, 140 ______________ __________ (1986) (where different sentencers impose the varying sentences, a sentence "increase" cannot truly be said to have taken place). -8- continuing the pattern of deceptive behavior noted in the first report prepared after his first conviction. (The first report had concluded that Hurlburt was a "con-man only too willing to deceive others through lying and his use of aliases . . . .") The second report concludes that Hurlburt has "no redeeming qualities that would make him an asset to remain in the community," that his prospects for rehabilitation were "dismal," and that Hurlburt should participate in "intense psychological counseling" while incarcerated. As the Supreme Court has made clear, conduct which sheds light on a defendant's "moral character and suitability for rehabilitation" may be used to rebut the Pearce presumption. See Alabama v. Smith, 490 U.S. 794, 801- ______ ___________ _____ 02 (1989). Furthermore, the presentence reports do contain information about Hurlburt's conviction for possessing the implements of escape which was obtained after his first sentencing. The first report makes specific reference to Hurlburt's pending indictment on that charge, and a copy of his ensuing conviction is attached to the report. At the sentencing hearing, Judge Temple not only stated that he had read the reports, but he also evidenced his awareness that Hurlburt's convictions were attached to the first report, suggesting that he had in fact reviewed them. In addition, the implements-of-escape conviction was specifically -9- mentioned when the question of crediting the time which Hurlburt had already served arose at sentencing. The state explained that Hurlburt had received credit at his first sentencing for the post-arrest time he had served, that it assumed that he would be entitled to credit for all of the time served on "this charge", and that it did not believe that any time served for "[t]he other charge for which he was convicted following this, and on which was imposed a one and a half to three years consecutive [sentence] . . . has been credited . . . [b]ut it should only be credited towards one of the offenses."4 In response, Judge Temple evidenced no confusion as to which "other" conviction the state meant, but asked only whether the exact days to be credited had been calculated. After Hurlburt's counsel gave the figure of 830 days, Judge Temple took a brief recess. When he returned, he announced his reasons for imposing the maximum possible sentence, which are quoted above, and immediately thereafter stated that Hurlburt would be allowed pretrial confinement credit of 830 days. We conclude, therefore, that Judge Temple, having read the presentence reports and having been reminded of the intervening conviction immediately before he ____________________ 4. Since the only intervening conviction evidenced by the record for which a 1 1/2 to 3 year consecutive sentence was imposed was Hurlburt's implements-of-escape conviction, the state could only have been referring to that conviction. -10- imposed sentence, could well have taken that conviction into account in imposing the sentence he did. In any event, Judge Temple made clear that the sentence he imposed was also based on the "record that has been presented to me here today . . . and what I observed and listened to during the trial as well . . . ." Arguably, the word "record" encompasses more than just Hurlburt's criminal record, which was described in detail at the sentencing hearing, but includes as well any pattern of conduct by Hurlburt which came to Judge Temple's attention.5 At sentencing, the state alluded to misrepresentations by Hurlburt which it had "already recounted to the court" (presumably at some other time), and to Hurlburt's apparent practice, in connection with both the first and second trials, of making claims which he alleged he could support by affidavit, but never did. The state also reminded the court of threatening letters which Hurlburt had written to a key prosecution witness, as to which there had been testimony at the second trial. It suggested that Hurlburt had lied at the sentencing hearing itself when he told Judge Temple that he had not made the misleading statements attributed to him in ____________________ 5. The criminal record discussed at the sentencing hearing consisted of Hurlburt's pre-1988 record, and we assume that the same record was presented to Judge Nadeau. To the extent that we need to inquire into what was different at this sentencing which would explain the different sentence, therefore, reliance on that record is not sufficient. -11- the updated presentence report, arguing that the statements in the report could only have come from Hurlburt and citing as corroboration in one instance statements made by Hurlburt during a deposition held before the second trial.6 In connection with its review of the cited instances of deceptive or obstructive conduct by Hurlburt, the state agreed with the probation officer's assessment that "everything points to absolutely no hope for the rehabilitation of this man. There is a need to protect society from this person, and the need to punish him for his conduct and incarcerate him for a period of time that will give full consideration and full weight to his extensive criminal involvement and his extensive efforts to perpetrate a fraud on this Court at every opportunity." Thus, the state argued at length and vigorously that Hurlburt's persistent deceptive and obstructive conduct, some of which came to light in the presentence reports and at trial, had to be taken into account in sentencing. Given Judge Temple's statement that he had based Hurlburt's sentence on the presentence reports, on the record presented to him at the sentencing hearing and on what he saw and heard at trial, we ____________________ 6. The county attorney representing the state also described certain allegations which Hurlburt was alleged to have made against her personally and against the county attorney's office, but Judge Temple stated that he would not take those allegations, which were not otherwise detailed in the record, into consideration in sentencing Hurlburt. For that reason, they are also irrelevant to this discussion. -12- think it reasonable to conclude that Judge Temple considered that conduct in imposing the sentence he did on Hurlburt. Finally, we think it significant that the state objected vigorously to the probation department's recommendation that Hurlburt be sentenced to 7 1/2 to 15 years, which was the sentence imposed by Judge Nadeau. It argued that the probation officer, who had recommended the "maximum incarceration term", had not understood that the state enhanced sentencing statute permitted a term of 10 to 30 years. The state told Judge Temple that it had asked that that sentence be imposed after the first trial. It acknowledged that Judge Nadeau had only imposed 7 1/2 to 15 years, but argued for the enhanced sentence because "that is the sentence that . . . should be imposed" under the state enhanced sentencing statute. When Hurlburt stated that Judge Temple could only impose the sentence given by Judge Nadeau, Judge Temple asked whether Hurlburt wanted "to be heard as to what the sentence should be[.]" Hurlburt's only response was that "I feel that the Court has already made up its mind. . . . I would not even at this juncture venture to request any type of sentence. I would rely upon the sound discretion and intelligence of the Court." Essentially, therefore, the state argued that it had always believed that imposing the enhanced sentence would be the correct sentencing result and that Judge Nadeau's sentence had not accounted adequately for -13- Hurlburt's history and character, and Hurlburt made no counterargument. In a somewhat different context, we indicated that imposing a sentence after successful appeal of a conviction for the express purpose of bringing "original sentencing intentions to fruition" was permissible. See ___ United States v. Pimienta-Redondo, 874 F.2d 9, 13 (1st Cir.), _____________ ________________ cert. denied, 493 U.S. 890 (1989) (declining to apply the ____________ Pearce presumption where the district court reimposed the ______ original sentence after remand despite reversal on one count by the court of appeals). To the extent that Judge Temple may be inferred to have believed that the state was right and that Judge Nadeau's sentence had been too low, that motivation would be permissible and would provide a nonvindictive reason for imposing the increased sentence. As this discussion shows, the presentence reports and the sentencing transcript contain "objective information concerning identifiable conduct" of Hurlburt's consistent with Judge Temple's stated reasons which would support the increased sentence Hurlburt received. Accordingly, we conclude that Judge Temple's stated reasons for imposing an extended term of 10 to 30 years were "on-the-record, wholly logical, nonvindictive reason[s] for the sentence" which rebut the Pearce presumption. See McCullough, 475 U.S. at ______ ______________ 140. -14- Accordingly, the judgment of the district court is affirmed. ________ -15-