## WILLIAM A. CONNELLY *v.* COMMISSIONER OF CORRECTION
### (SC 16277)

McDonald, C. J., and Norcott, Katz, Palmer and Sullivan, Js.*

---

* The listing of justices reflects their seniority status on this court as of the date of argument.

Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion officially was released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

Argued November 30, 2000—officially released October 9, 2001

*William A. Connelly,* pro se, the appellant (petitioner).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Jo Anne Sulik,* assistant state's attorney, for the appellee (respondent).

*Opinion*

PALMER, J. The sole issue raised by this appeal is whether the habeas court properly rejected the claim of the petitioner, William A. Connelly, that the forty year prison sentence he received following his conviction of two counts of kidnapping in the second degree in

violation of General Statutes (Rev. to 1989) § 53a-94[1] and two counts of assault in the second degree in violation General Statutes (Rev. to 1989) § 53a-60[2] was the product of judicial vindictiveness in violation of his constitutional right to due process.[3] We affirm the judgment of the habeas court.

The relevant facts and unusual procedural history of this case are set forth in *State* v. *Connelly*, 46 Conn. App. 486, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998), in which the Appellate Court affirmed the petitioner's kidnapping and assault convictions. Id., 513. "On November 10, 1989, the [petitioner] and his brother Brian Connelly resided at their mother's house in the town of Newington. Their mother, at that time, was hospitalized. The [petitioner's] other brothers, Timothy Connelly and Edward Connelly, and sister, Maureen Briggs, thought that their mother should be placed in a nursing home. The [petitioner] disagreed.

"That morning, Edward and Timothy arrived at their mother's house to clean out a room that Timothy had

---

[1] General Statutes (Rev. to 1989) § 53a-94 provides in relevant part: "(a) A person is guilty of kidnapping in the second degree when he abducts another person. . . ."

" 'Abduct' means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation." General Statutes § 53a-91 (2).

[2] General Statutes (Rev. to 1989) § 53a-60 provides in relevant part: "(a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

[3] The due process clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

been using as an office. While they were moving the room's contents, the mail arrived, and Edward brought it in. The [petitioner] accused Edward of taking mail that did not belong to him because the [petitioner] believed that an envelope containing a large check had arrived for Brian. Edward and Timothy were in a bedroom. From the hallway, the [petitioner] argued with them about the mail. He then pulled a gun from his clothing and fired a shot, which struck no one and lodged in the back wall of the bedroom. The [petitioner] entered the bedroom, locked the door, and ordered Edward and Timothy to get down on the floor. He asked Brian, who was in the hallway, to telephone the Federal Bureau of Investigation (FBI). When Brian refused, the [petitioner] tried to place the call himself but instead reached the Newington police department.

"Newington police officer Michael Tkac responded to the telephone call. The [petitioner] told Tkac that he was holding Edward and Timothy for mail fraud, and that he would release them only to the FBI. Other officers, including a special weapons and tactics police team, arrived at the house. The [petitioner] demanded that the FBI, Attorney Edward Daly, and a court reporter arrive by 1 p.m. or else he would shoot Edward. At 12:50 p.m., the FBI had not arrived, and the [petitioner] shot Edward in the wrist, breaking a bone. The [petitioner] set another deadline of 3 p.m., threatening to shoot Timothy if the persons he requested had not arrived. The [petitioner] asked for certain documents from his briefcase, which were passed under the door to him. At approximately 2:50 p.m., the [petitioner] shot Timothy in the hand, injuring bones and ligaments." Id., 488–89.

"[O]n April 20, 1990, in a trial to the court, *Dunn, J.,* the [petitioner] was found not guilty by reason of [lack

of capacity due to mental disease or defect][4] of . . .
two counts of kidnapping in the second degree and two
counts of assault in the second degree arising out of
the . . . incident. He was then committed [by the trial
court, *Holzberg, J.*] to the custody of the commissioner
of mental health . . . for a period of ten years, subject
to periodic [review] by the psychiatric security review
board.[5] The [petitioner] did not appeal from either . . .
[the judgment of] acquittal [by reason of lack of capacity
due to mental disease or defect] or his commitment to
the custody of the commissioner of mental health."[6]
(Citation omitted.) Id., 490.

In 1993, the petitioner filed a petition for a writ of
habeas corpus seeking, inter alia: (1) to vacate the trial
court's judgment of acquittal by reason of lack of capac-
ity due to mental disease or defect and to have the case
remanded to the trial court for further proceedings; and
(2) to be released from the custody of the commissioner
of mental health and to be transferred to the custody
of the commissioner of correction. Id. "The [petitioner]
claimed in his habeas petition that his confinement was
illegal because, among other things . . . he was not
canvassed regarding the waiver of his right to a jury

---

[4] See General Statutes § 53a-13 (a) ("[i]n any prosecution for an offense,
it shall be an affirmative defense that the defendant, at the time he committed
the proscribed act or acts, lacked substantial capacity, as a result of mental
disease or defect, either to appreciate the wrongfulness of his conduct or
to control his conduct within the requirements of the law"). Simply for ease
of reference, we use the terms "lack of capacity due to mental disease or
defect" and "insanity" interchangeably throughout this opinion.

[5] The petitioner was confined at the Whiting Forensic Institute in Mid-
dletown.

[6] "A person committed to the custody of the commissioner of mental
health, after a trial in which a verdict of not guilty by reason of [lack of
capacity due to] mental disease or defect has been [returned], may appeal
from the commitment order. General Statutes § 17a-597; *State* v. *Warren*,
169 Conn. 207, 363 A.2d 91 (1975)." *State* v. *Connelly*, supra, 46 Conn. App.
490 n.3.

trial.[7] The record in the habeas proceeding reveals that his [habeas] attorney cautioned him that, if he were to prevail on his habeas petition, he would be exposed to incarceration by the commissioner of correction. The habeas court, *Higgins, J.*, on August 16, 1994, pursuant to General Statutes § 52-493,[8] ordered that the [trial court's] judgment of acquittal by reason of [lack of capacity due to mental disease or defect] be vacated and issued a writ of habeas corpus. . . . In affording the [petitioner] relief, the habeas court relied on [his] claim that his constitutional right to a trial by jury was violated because he had not waived his right to a jury trial on the record." Id., 490–91.

In January, 1995, the petitioner was retried on the same charges of which he previously had been acquitted by reason of lack of capacity due to mental disease or defect, namely two counts of second degree kidnapping and two counts of second degree assault. Id., 492. A

---

[7] General Statutes § 54-82b (b) provides: "In criminal proceedings the judge shall advise the accused of his right to trial by jury at the time he is put to plea and, if the accused does not then claim a jury, his right thereto shall be deemed waived, but if a judge acting on motion made by the accused within ten days after judgment finds that such waiver was made when the accused was not fully cognizant of his rights or when, in the opinion of the judge, the proper administration of justice requires it, the judge shall vacate the judgment and cause the proceeding to be set for jury trial."

Practice Book § 42-1 provides: "The defendant in a criminal action may demand a trial by jury of issues which are triable of right by jury. If at the time the defendant is put to plea, he or she elects a trial by the court, the judicial authority shall advise the defendant of his or her right to a trial by jury and that a failure to elect a jury trial at that time may constitute a waiver of that right. If the defendant does not then elect a jury trial, the defendant's right thereto may be deemed to have been waived."

[8] General Statutes § 52-493 provides: "Order in the nature of prerogative writs. Any court having cognizance of writs of habeas corpus, mandamus, quo warranto, prohibition or ne exeat may, in any action pending before it, make any order, interlocutory or final, in the nature of any such writ, to the extent of its jurisdiction, so far as it may appear to be an appropriate form of relief."

jury found the petitioner guilty of all charges,[9] and the trial court, *Scheinblum, J.*, rendered judgment in accordance with the jury's verdict and sentenced the petitioner to a total effective sentence of forty years imprisonment. On appeal, the Appellate Court affirmed the second trial court's judgment of conviction.[10] Id., 513.[11]

Thereafter, the petitioner filed a petition for a writ of habeas corpus, in which he claimed that the second trial court had imposed a forty year prison sentence in retaliation for his successful habeas challenge to his insanity acquittal and attendant period of commitment. In support of his claim, the petitioner relied primarily on *North Carolina* v. *Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), and its progeny, which hold that, in some circumstances, an increased sentence after retrial for the same charges gives rise to a rebuttable presumption of judicial vindictiveness. See, e.g., *Wasman* v. *United States*, 468 U.S. 559, 564–65, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984). The petitioner requested that his second sentence of forty years be vacated and the original sentence of ten years be reinstated. The habeas court, *Hon. Thomas H. Corrigan*, judge trial referee, rejected the petitioner's claim and dismissed the petitioner's habeas petition, concluding that a presumption of vindictiveness is not warranted when the second sentence follows an insanity acquittal

[9] The petitioner, a college graduate who apparently also attended law school, represented himself at the second trial. The petitioner's pro se status at that trial is not an issue in this appeal.

[10] The claims raised by the petitioner in connection with his direct appeal to the Appellate Court are not a subject of this appeal.

[11] The petitioner filed petitions for certification to appeal to this court from the judgment of the Appellate Court, which were denied. *State* v. *Connelly*, 244 Conn. 907, 908, 713 A.2d 829 (1998). Thereafter, the petitioner filed a petition for a writ of certiorari to the United States Supreme Court, which also was denied. *Connelly* v. *Connecticut*, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998).

and period of commitment, as in the present case, rather than a conviction and sentence of imprisonment. Judge Corrigan also concluded that, because Judge Scheinblum had articulated "logical, nonvindictive reasons for the [forty year] sentence," the petitioner had failed to establish that that sentence was the product of actual vindictiveness. The petitioner appealed from the judgment dismissing his habeas petition to the Appellate Court,[12] and we transferred the case to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1. On appeal,[13] the petitioner renews his constitutional due process claim.[14] We conclude that the petitioner's claim is without merit and, therefore, affirm the judgment of the habeas court.[15]

We begin our analysis of the petitioner's claim with a review of the applicable precedent. In *North Carolina* v. *Pearce*, supra, 395 U.S. 711, "the United States

[12] Judge Corrigan granted the petitioner's petition for certification to appeal to the Appellate Court from the judgment of the habeas court dismissing the petitioner's petition for a writ of habeas corpus.

[13] The petitioner, who represented himself before the habeas court, also represents himself on appeal.

[14] Although the petitioner also alleges a due process violation under article first, § 8, of the constitution of Connecticut, he has not provided any independent analysis of that claim. We, therefore, confine our analysis to his claim under the federal constitution. See, e.g., *State* v. *Schiappa*, 248 Conn. 132, 136–37 n.9, 728 A.2d 466, cert. denied, 528 U.S. 862, 120 S. Ct. 152, 145 L. Ed. 2d 129 (1999).

[15] The state asserted in the habeas court that the petitioner was not entitled to review of his judicial vindictiveness claim because he had failed to establish sufficient reason why he did not raise that claim in his direct appeal from the judgment of conviction. See *Jackson* v. *Commissioner of Correction*, 227 Conn. 124, 131, 629 A.2d 413 (1993) (in collateral attack on conviction, petitioner must establish cause for failure to raise claim on direct appeal and actual prejudice). The habeas court, however, rejected the petitioner's claim of judicial vindictiveness on the merits without addressing the issue of procedural default. The state renews its claim of procedural default on appeal, essentially as an alternative ground for affirmance. In light of our determination that Judge Corrigan properly rejected the petitioner's claim of judicial vindictiveness on the merits, we need not consider the state's claim of procedural default.

Supreme Court examined the constitutional constraints imposed on a court which metes out a greater sentence upon retrial than that which the defendant originally received. After holding that neither the equal protection clause nor the double jeopardy provision imposes an absolute bar to a harsher sentence upon reconviction, the court considered the impact of the due process clause on such a position. Id., 723–26. Where a conviction has been set aside, the action of a court in imposing a harsher sentence upon reconviction for the purpose of punishing a defendant for exercising his rights in seeking to have the conviction set aside is a flagrant violation of due process of law. Id., 723–24. Due process requires that vindictiveness must not [play a part in] resentencing that results from a successful attack on a defendant's conviction. Id., 725. A defendant's fear of such vindictive behavior may unconstitutionally deter the exercise of the right to appeal or to attack collaterally a conviction, and thus, due process requires that a defendant be free from such apprehension. Id. To ensure that retaliatory motivation does not [play a part in] the resentencing process, whenever a court imposes a harsher sentence following a new trial, the court must state its reasons upon the record. Id., 726.

"The United States Supreme Court has subsequently examined the applicability of the *Pearce* presumption of vindictiveness. See, e.g., *Texas* v. *McCullough*, 475 U.S. 134, [136, 138, 141] 106 S. Ct. 976, 89 L. Ed. 2d 104 (1986) (defendant originally sentenced by jury; judge concluded defendant entitled to new trial; upon retrial defendant chose sentencing by judge; *Pearce* presumption inapplicable and even if it were to apply, court's findings overcame presumption); *Wasman* v. *United States*, [supra, 468 U.S. 569–70] (presumption of vindictiveness applies since petitioner received greater sentence following retrial than that he had originally received; consideration by court of conviction between

original sentencing and sentencing after retrial rebuts presumption); *United States* v. *Goodwin*, 457 U.S. 368, [380–81], 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982) (pretrial decision by prosecutor to modify charges does not warrant presumption of prosecutorial vindictiveness in pretrial setting); *Bordenkircher* v. *Hayes*, 434 U.S. 357, [358, 365], 98 S. Ct. 663, 54 L. Ed. 2d 604 . . . (1978) (prosecutor's action in carrying through on statement made during plea negotiations to bring additional charges against defendant if he refused to plead guilty to offense originally charged did not violate due process clause); *Blackledge* v. *Perry*, [417 U.S. 21, 28–29, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974)] (prosecutor [violated due process clause when he brought] more serious charge against defendant prior to trial de novo in response to defendant's exercise of statutory right to appeal); *Chaffin* v. *Stynchcombe*, 412 U.S. 17, [28], 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973) ([when jury charged with responsibility of] resentencing [defendant] . . . potential for abuse in sentencing is minimal [and] *Pearce* does not apply); *Colten* v. *Kentucky*, 407 U.S. 104, [112, 116], 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972) (prophylactic rule announced in *Pearce* not appropriate in context of two-tier system which allowed for trial de novo in court of general criminal jurisdiction following trial or guilty plea in an inferior court; likelihood of vindictiveness not present).

"The decision in . . . *Pearce* . . . was only premised on the apparent need to guard against *vindictiveness* in the resentencing process. . . . [I]n certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right . . . it [is] necessary to presume an improper vindictive motive. Given the severity of such a presumption, however— which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—[the presumption

applies] only in cases in which a reasonable likelihood of vindictiveness exists. . . . The *Pearce* requirements thus do not apply in every case [in which] a convicted defendant receives a higher sentence on retrial. Like other judicially created means of effectuating the rights secured by the [United States constitution] . . . [the United States Supreme Court has] restricted application of *Pearce* to areas where its objectives are thought most efficaciously served . . . . *Texas* v. *McCullough*, supra, [475 U.S.] 138.

"The violation of due process [found in cases] such as *Pearce* and *Perry* does not arise from the possibility that a defendant may be discouraged from exercising legal rights, but instead from the danger that the State might be retaliating against the accused for lawfully attacking his conviction. *Bordenkircher* v. *Hayes*, supra, [434 U.S.] 363. [W]here the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness. . . .

"The United States Supreme Court recently revisited this issue in *Alabama* v. *Smith*, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). *Smith* clarified the scope of the *Pearce* rule, stating that [w]hile the *Pearce* opinion appeared on its face to announce a rule of sweeping dimension, [the court's] subsequent cases have made clear that its presumption of vindictiveness do[es] not apply in every case [in which] a convicted defendant receives a higher sentence on retrial. . . . Id., 799. The court further explained that the application of the *Pearce* rule is limited to circumstances where its objectives are thought most efficaciously served, [namely] those [circumstances] in which there is a reasonable likelihood . . . that the increase in sentence is the product of actual vindictiveness on the part of the sen-

tencing authority. . . . Id. On the basis of this conclusion, the court reasoned that when a greater penalty is imposed after trial than was imposed after a prior guilty plea, the increase in sentence is not more likely than not attributable to . . . vindictiveness on the part of the sentencing judge. . . .[16]

"[Accordingly] there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea . . . . [Id.], 801–803."[17] (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Coleman*, 242 Conn. 523, 535–39, 700 A.2d 14 (1997).

---

[16] The United States Supreme Court provided the following explanation in support of its conclusion: "Even when the same judge imposes both sentences, the relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial. A guilty plea must be both voluntary and intelligent . . . because it is the defendant's admission in open court that he committed the acts charged in the indictment . . . . But the sort of information which satisfies this requirement will usually be far less than that brought out in a full trial on the merits.

"As this case demonstrates . . . in the course of the proof at trial the judge may gather a fuller appreciation of the nature and extent of the crimes charged. The defendant's conduct during trial may give the judge insights into his moral character and suitability for rehabilitation. . . . Finally, after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present. . . . In [such] cases . . . [therefore, the court] think[s] there are enough justifications for a heavier second sentence that it cannot be said to be more likely than not that a judge who imposes one is motivated by vindictiveness." (Citations omitted; internal quotation marks omitted.) *Alabama* v. *Smith*, supra, 490 U.S. 801–802.

[17] In *Coleman*, we invoked our "supervisory authority [over the administration of justice] to require trial courts to explain, *upon request by a defendant*, their reasons for imposing a greater sentence after trial than previously had been imposed under the terms of a plea agreement." (Emphasis added.) *State* v. *Coleman*, supra, 242 Conn. 542. This requirement applies even when the two sentences are imposed by different judges, as in the present case. See id. The petitioner, who did not request such an explanation from the trial court, makes no claim that he is entitled to a new sentencing hearing under the rule that we adopted in *Coleman*.

In light of the foregoing precedent, the petitioner can prevail on his claim of presumptive judicial vindictiveness under *Pearce* and its progeny only if *all* of the following conditions are met: (1) the sentence he received following his second trial is greater than the sentence he received after his first trial; (2) the circumstances culminating in the greater sentence give rise to a reasonable likelihood that the sentence is the product of actual vindictiveness on the part of the sentencing judge; and (3) that judge failed to articulate reasons sufficient to justify the greater sentence. We agree with Judge Corrigan that the petitioner has failed to meet this burden. We also conclude that Judge Corrigan properly determined that the petitioner had failed to establish that his sentence was the product of actual vindictiveness.

"[B]efore undertaking a *Pearce* analysis, we must determine whether the [second] sentence imposed . . . was, in fact, greater than the sentence originally imposed. . . . In determining whether the sentence was more severe, [i]t is the actual effect of the new sentence as a whole on the total amount of punishment lawfully imposed by [the judge] on the defendant . . . which is the relevant inquiry . . . . Further[more], [i]n determining whether the second sentence is harsher than the first, we look not at the technical length of the sentence but at its overall impact [on the defendant]." (Citations omitted; internal quotation marks omitted.) *State* v. *Faria*, 254 Conn. 613, 622–23, 758 A.2d 348 (2000).

As *Pearce* and its progeny make clear, the petitioner cannot prevail on his judicial vindictiveness claim unless he makes a threshold showing that the forty year sentence imposed by Judge Scheinblum is greater than the sentence that he had received following his first trial. In common parlance, the petitioner's forty year sentence reasonably may be considered "greater," or

more severe, than the ten year period of commitment imposed after the petitioner's first trial. For purposes of the comparison required by *Pearce*, however, equating a term of imprisonment with a period of commitment is like comparing apples with oranges. A commitment following an insanity acquittal is not a sanction, and its purpose, therefore, is entirely different from that of a criminal sentence. "As a general matter, the confinement of insanity acquittees, although resulting initially from an adjudication in the criminal justice system, is not punishment for a crime. The purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness. The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous. . . . As he was not convicted, he may not be punished. His confinement rests on his continuing illness and dangerousness. *Jones* v. *United States*, 463 U.S. 354, 368–69, 103 S. Ct. 3043, 77 L. Ed. 2d 694 (1983)." (Internal quotation marks omitted.) *Payne* v. *Fairfield Hills Hospital*, 215 Conn. 675, 683–84, 578 A.2d 1025 (1990). Thus, unlike a defendant who has been convicted of a crime, a defendant who has been found not guilty by reason of lack of capacity due to mental disease or defect is not criminally responsible for his or her unlawful conduct and, consequently, certain important goals of sentencing, including punishment and deterrence, are inapplicable. See *Jones* v. *United States*, supra, 369 ("There simply is no necessary correlation between severity of the offense and length of time necessary for recovery. The length of the acquittee's hypothetical criminal sentence therefore is irrelevant to the purposes of his commitment.") Therefore, the considerations that motivated Judge Holzberg to impose a ten year period of commitment following the petitioner's insanity acquittal are wholly different from the factors

considered by Judge Scheinblum when he imposed the forty year sentence in connection with the petitioner's judgment of conviction. In light of this "fundamental distinction between . . . incarceration pursuant to a criminal sentence and . . . commitment following an insanity acquittal"; *Copeland* v. *Warden*, 225 Conn. 46, 49, 621 A.2d 1311 (1993); it is difficult, if not impossible, meaningfully to compare the two as contemplated by *Pearce* because, in such circumstances, "a sentence increase cannot truly be said to have taken place." (Internal quotation marks omitted.) *Texas* v. *McCullough*, supra, 475 U.S. 140. Therefore, it is highly questionable whether the petitioner's successful challenge to his insanity acquittal provides a proper predicate for application of the *Pearce* rule.

Even if we assume, for purposes of the comparison mandated by *Pearce*, that the sentence imposed on the petitioner after his second trial is greater than the period of commitment he received following his insanity acquittal, the petitioner has not demonstrated that the *Pearce* presumption applies to the present case. When a different judge presides at the second trial, as in the present case, the likelihood of vindictiveness is minimal: that judge has "no personal stake in the prior conviction and no motivation to engage in self-vindication"; *Chaffin* v. *Stynchcombe*, supra, 412 U.S. 27; because "it is not the court that is asked to do over what it thought it had already done correctly." *Colten* v. *Kentucky*, supra, 407 U.S. 116–17; see also *State* v. *Coleman*, supra, 242 Conn. 544 n.24 (when different judge imposes subsequent sentence, probability that sentence will be viewed as vindictive is substantially reduced). Thus, the United States Supreme Court has stated that the *Pearce* "presumption is . . . inapplicable [when] different sentencers [have] assessed the varying sentences that [the defendant] receive[s]. . . . [W]hen different sentencers are involved, [i]t may often

be that the [second sentencer] will impose a punishment more severe than that received from the [first]. But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty." (Citation omitted; internal quotation marks omitted.) *Texas* v. *McCullough, supra,* 475 U.S. 140, quoting *Colten* v. *Kentucky, supra,* 117. Therefore, as long as the record reflects a reasonable, nonvindictive basis for the greater sentence, there is no reason to presume that it is the product of a retaliatory motive. See *Texas* v. *McCullough, supra,* 140.[18] Finally, "it is not necessary that the second sentencing judge rely on and provide facts not available

---

[18] In *Texas* v. *McCullough, supra,* 475 U.S. 134, the defendant was tried before a jury and convicted of murder. Id., 135. In accordance with Texas law, the defendant elected to be sentenced by the jury, which imposed a term of imprisonment of twenty years. Id., 135–36. Thereafter, however, the trial judge granted the defendant's motion for a new trial on the ground of prosecutorial misconduct. Id., 136. The defendant was retried before a jury, and the same judge who had presided over the defendant's first trial also presided at the retrial. Id. The second jury also found the defendant guilty of murder, and this time the defendant requested that the judge determine his sentence. Id. The judge imposed a term of imprisonment of fifty years. Id. In response to the defendant's postconviction motion, the judge explained why the sentence that she imposed was longer than that set by the jury in the first trial. Id. In particular, the judge stated that she had been influenced by the testimony of two witnesses who had not testified at the first trial, and, in addition, that she had learned, for the first time on retrial, that the defendant had been released from prison only four months prior to committing the murder for which he had been convicted. Id. Finally, the judge acknowledged that, if she had sentenced the defendant after his first trial, she would have imposed a term of more than twenty years imprisonment. Id. On appeal, the Texas Court of Criminal Appeals concluded that the *Pearce* presumption applied and resentenced the defendant to twenty years imprisonment. Id. On appeal to the United States Supreme Court, that court concluded that, because the twenty year and fifty year sentences were imposed by two different sentencing authorities, "there was no realistic motive for vindictive sentencing [and, consequently] the *Pearce* presumption was inappropriate." Id., 139. In concluding that a presumption of vindictiveness was unwarranted, the court added: "[T]he second sentencer provides an on-the-record, wholly logical, nonvindictive reason for the sentence. We read *Pearce* to require no more, particularly since trial judges must be accorded broad discretion in sentencing . . . ." Id., 140.

at the time of the first sentence to support the more severe sentence"; *Macomber* v. *Hannigan*, 15 F.3d 155, 157 (10th Cir. 1994); see *Rock* v. *Zimmerman*, 959 F.2d 1237, 1257 (3d Cir.), cert. denied, 505 U.S. 1222, 112 S. Ct. 3036, 120 L. Ed. 2d 905 (1992) (*Pearce* presumption is inapplicable when "the second sentence is imposed by a different sentencer and the record provides an affirmative assurance that the harsher sentence reflects simply a fresh look at the facts and an independent exercise of discretion"); *Gauntlett* v. *Kelley*, 849 F.2d 213, 217 (6th Cir. 1988) (when "resentencing judge [relies] on objective information . . . justifying the increased sentence . . . the information [need] not relate to conduct of the defendant that occurred after the initial sentence" [citation omitted; internal quotation marks omitted]); because "trial judges must be accorded broad discretion in sentencing . . . ." *Texas* v. *McCullough*, supra, 140.

Although the defendant in *McCullough* originally was convicted and sentenced by a jury and, following a retrial before a second jury, was found guilty and sentenced by the trial judge; id., 135–36; the court's reasoning is no less applicable to the facts of the present case: when a different judge sentences a defendant after a retrial, *and* that judge articulates logical, nonvindictive reasons for the sentence, there simply is no sound basis to presume that that sentence is the product of judicial vindictiveness.[19] Thus, courts uniformly have con-

---

[19] We note that, in *Pearce*, the judge who imposed sentence after retrial was not the same judge who had imposed sentence after the first trial. See *Texas* v. *McCullough*, supra, 475 U.S. 140 n.3. In *McCullough*, however, the United States Supreme Court expressly rejected the contention that, on the basis of the court's holding in *Pearce*, a presumption of vindictiveness is created in such circumstances: "*Pearce* itself apparently involved different judges presiding over the two trials, a fact that has led some courts to conclude by implication that the presumption of vindictiveness applies even where different sentencing judges are involved. See, e.g., *United States* v. *Hawthorne*, 532 F.2d 318, 323 [3d Cir.], cert. denied, 429 U.S. 894 [97 S. Ct. 254, 50 L. Ed. 2d 177] (1976). That fact, however, may not have been drawn to the Court's attention and does not appear anywhere in the Court's opinion

cluded, under the federal constitution, that a presumption of vindictiveness is not warranted in such circumstances. See, e.g., *Macomber* v. *Hannigan,* supra, 15 F.3d 157; *United States* v. *Newman,* 6 F.3d 623, 630 (9th Cir. 1993); *United States* v. *Cheek,* 3 F.3d 1057, 1064 (7th Cir. 1993); *Rock* v. *Zimmerman,* supra, 959 F.2d 1257; *United States* v. *Perez,* 904 F.2d 142, 146 (2d Cir. 1990); *Gauntlett* v. *Kelley,* supra, 849 F.2d 217; *Commonwealth* v. *Hyatt,* 419 Mass. 815, 821, 647 N.E.2d 1168 (1995); *State* v. *Hurlburt,* 135 N.H. 143, 147, 603 A.2d 493 (1991); *People* v. *Young,* 94 N.Y.2d 171, 178, 723 N.E.2d 58, 701 N.Y.S.2d 309 (1999); see also *Hurlburt* v. *Cunningham,* 996 F.2d 1273, 1274 n.2 (1st Cir. 1993) ("research indicates that decisions by the [federal] circuit courts of appeals after *McCullough* have uniformly held that the *Pearce* presumption does not apply to the two-sentencer situation").

The record of the sentencing hearing before Judge Scheinblum reflects a wholly logical, nonvindictive basis for the forty year sentence. Immediately before imposing sentence, Judge Scheinblum observed that, although he would have preferred that the petitioner receive psychiatric treatment, he had no choice but to incarcerate the petitioner because the evidence adduced at trial indicated that he is a dangerous individual who steadfastly has refused psychiatric help notwithstanding his lengthy period of commitment at

in *Pearce.* Clearly the Court did not focus on it as a consideration for its holding. See *Hardwick* v. *Doolittle,* 558 F.2d 292, 299 [5th Cir. 1977], cert. denied, 434 U.S. 1049 [98 S. Ct. 897, 54 L. Ed. 2d 801] (1978). Subsequent opinions have also elucidated the basis for the *Pearce* presumption. [The court] held in *Chaffin* v. *Stynchcombe,* [supra] 412 U.S. [27] . . . for instance, that the presumption derives from the judge's personal stake in the prior conviction . . . a statement clearly at odds with reading *Pearce* to answer the two-sentencer issue. We therefore decline to read *Pearce* as governing this issue." (Citation omitted; internal quotation marks omitted.) *Texas* v. *McCullough,* supra, 140–41 n.3.

Whiting Forensic Institute (Whiting) in Middletown.[20] Furthermore, the presentence investigation report prepared in connection with the petitioner's sentencing, which Judge Scheinblum expressly stated that he had read, fully supports Judge Scheinblum's conclusions. That report states in relevant part: "[The petitioner] has refused all attempts of rehabilitation offered by the [s]tate . . . . His psychiatric condition that resulted in the [kidnapping and assault] offense[s] in 1989 is most probably the same today . . . . [The petitioner] continues to pose a real potential threat toward any target of his paranoia. Due to the serious nature of the offenses for which he was convicted and his outright refusal [of] mental health assistance, one can only consider the safety of the victims, other family members [and] any other individual involved with [the petitioner]." The report also indicated that several members of the petitioner's family were afraid of the petitioner and that they would relocate if and when the petitioner was released from custody.[21] Finally, the record of the sentencing hearing indicates that, although the petitioner regretted the harm that he had caused his victims, he nevertheless believed that he was justified in acting as he did and, further, that his actions were precipitated by the victims' wrongdoing.[22]

---

[20] We note that it is undisputed that the petitioner does not believe that he suffers from a mental illness and that he consistently has refused treatment for that illness.

[21] Indeed, one of the petitioner's brothers appeared at the sentencing hearing and personally advised Judge Scheinblum that he was fearful of the petitioner and would relocate upon the petitioner's release from custody.

[22] We note that, in light of these facts, the petitioner could not prevail even if the *Pearce* presumption did apply to the facts of the present case. The United States Supreme Court has held that, when the *Pearce* presumption applies, "a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." *Wasman* v. *United States*, supra, 468 U.S. 572. During the five year period from the date of his commitment to Whiting until the date of his sentencing by Judge Scheinblum, the petitioner consistently had refused to acknowledge or accept treatment for a serious mental illness that causes him to be a danger to others. This fact alone

Thus, at the time of sentencing, the petitioner, for the first time, stood convicted of several serious crimes of violence. The facts adduced at the sentencing hearing indicated that the petitioner: (1) was unwilling to accept responsibility for his misconduct; (2) lacked remorse for the crimes; (3) refused to acknowledge his mental illness; (4) rejected all attempts to treat that illness; and (5) represented a danger to the victims and others as a result of his untreated psychiatric condition. These facts provide a sound and logical basis for the prison term imposed by Judge Scheinblum.[23] Finally, the fore-

provided ample reason for Judge Scheinblum to conclude that a sentence in excess of ten years—the length of the commitment period fixed by Judge Holzberg—was appropriate.

[23] We acknowledge that the petitioner's forty year sentence is a lengthy one. We note, however, that both the prosecutor *and* the senior probation officer who prepared the presentence investigation report for Judge Scheinblum recommended that the petitioner receive a sentence of *fifty* years, the statutory maximum. Moreover, on direct appeal, the Appellate Court rejected the petitioner's claim that his sentence was excessive, concluding that the forty year prison term was within the limits fixed by statute for the offenses of which the petitioner was found guilty and did not constitute an abuse of discretion. See *State* v. *Connelly*, supra, 46 Conn. App. 503–504. The Appellate Court also noted that "a petition for sentence review . . . is the appropriate vehicle by which to have [his] claim evaluated." (Internal quotation marks omitted.) Id., 504.

Thereafter, the petitioner filed an application for a reduction in his sentence with the sentence review division of the Superior Court. The sentence review division denied the petitioner's application. In concluding that the petitioner's sentence was not excessive, the sentence review division explained: "[The] [p]etitioner was convicted of serious felony charges involving the shooting of two innocent hostages. The maximum sentence which could be imposed for these violations was fifty years in prison. The prime index of the gravity of a particular crime is the length of the statutorily authorized prison sentence that a defendant convicted of the crime may be required to serve. . . . The officer who prepared the presentence investigation [report] recommended a fifty year sentence.

"At the time of the sentencing, [the] petitioner made a concerted effort to convince the court that he was not a threat to anyone and that he was an excellent candidate for rehabilitation. The record clearly indicates, however, that at sentencing, [the] petitioner still clung to his conspiracy theory and maintained that the victims were at fault. He has never shown any remorse for his criminal conduct, but has attempted to give reasons for the crime[s]. [The] [p]etitioner indicated that he would not cooperate

going facts strongly support Judge Corrigan's conclusion that the petitioner failed to establish actual vindictiveness. The petitioner, moreover, adduced no evidence to suggest that the forty year sentence was imposed in retaliation for his successful attack on his insanity acquittal, or for any other improper reason.[24] In the absence of any such evidence, Judge Corrigan properly rejected the petitioner's claim of actual vindictiveness.

The judgment is affirmed.

In this opinion the other justices concurred.

---

with any type of psychiatric help and resisted any recommitment to Whiting. [On the basis of these facts, the] petitioner confused a need for psychiatric treatment with a finding of competency. Under the circumstances the court could clearly determine that petitioner was, in fact, a threat to the public and his former victims."

[24] We also note that the petitioner, on direct appeal from the judgment of conviction, had claimed that Judge Scheinblum was biased against him. The Appellate Court rejected that claim, however, concluding that its "thorough review of the record [did] not reveal any bias of the court." State v. Connelly, supra, 46 Conn. App. 506.

