## WILLIAM A. CONNELLY *v.* COMMISSIONER OF CORRECTION
### (SC 16281)

McDonald, C. J., and Norcott, Katz, Palmer and Sullivan, Js.*

* The listing of justices reflects their seniority status on this court as of the date of argument.

Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion officially was released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

Argued November 30, 2000—officially released October 9, 2001

*Gregory T. D'Auria*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellant (respondent).

*William A. Connelly*, pro se, the appellee (petitioner).

*Monte P. Radler*, supervisory assistant public defender, and *Gerard A. Smyth*, chief public defender, filed a brief for the office of the chief public defender as amicus curiae.

*Opinion*

PALMER, J. The primary issue raised by this appeal is whether an insanity[1] acquittee who succeeds in having his acquittal vacated and, following a retrial, is convicted and sentenced to a term of imprisonment, is entitled, under General Statutes § 53a-38 (c),[2] to credit

[1] Simply for ease of reference, we use the terms "insanity" and "lack of capacity due to mental disease or defect" interchangeably throughout this opinion. See General Statutes § 53a-13 (a) ("[i]n any prosecution for an offense, it shall be an affirmative defense that the defendant, at the time he committed the proscribed act or acts, lacked substantial capacity, as a result of mental disease or defect, either to appreciate the wrongfulness of his conduct or to control his conduct within the requirements of the law").

[2] General Statutes § 53a-38 (c) provides: "When a sentence of imprisonment that has been imposed on a person is vacated and a new sentence is imposed on such person for the same offense or for an offense based on the same act, the new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced, and all time served under or credited against the vacated sentence shall be credited against the new sentence."

Although § 53a-38 (c) was subject to a technical amendment in 1992; see Public Acts 1992, No. 92-260, § 17; that amendment has no bearing on the merits of this appeal and, therefore, we refer to the current revision for convenience.

toward his prison sentence for the period that he was confined in a mental health facility pursuant to a commitment order issued as a result of his insanity acquittal in accordance with what is now General Statutes § 17a-582.[3] We answer the question in the affirmative.

[3] General Statutes § 17a-582 provides: "Confinement of acquittee for examination. Court order of commitment to board or discharge. (a) When any person charged with an offense is found not guilty by reason of mental disease or defect pursuant to section 53a-13, the court shall order such acquittee committed to the custody of the Commissioner of Mental Health and Addiction Services who shall cause such acquittee to be confined, pending an order of the court pursuant to subsection (e) of this section, in any of the state hospitals for psychiatric disabilities or to the custody of the Commissioner of Mental Retardation, for an examination to determine his mental condition.

"(b) Within forty-five days of the order of commitment pursuant to subsection (a) of this section, the superintendent of such hospital or the Commissioner of Mental Retardation shall cause the acquittee to be examined and file a report of the examination with the court, and shall send a copy thereof to the state's attorney and counsel for the acquittee, setting forth the superintendent's or said commissioner's findings and conclusions as to whether the acquittee is a person who should be discharged.

"(c) Within ten days of receipt of such superintendent's or said commissioner's report, either the state's attorney or counsel for the acquittee may file notice of intent to perform a separate examination of the acquittee. An examination conducted on behalf of the acquittee may be performed by a psychiatrist or psychologist chosen by the acquittee and shall be performed at the acquittee's expense unless he is indigent. If the acquittee is indigent, the court shall provide him with the services of a psychiatrist or psychologist to perform the examination at the expense of the state. The superintendent or said commissioner who conducted the initial examination shall, within five days of a request of any party conducting a separate examination pursuant to this subsection, release to such party all records and reports compiled in the initial examination of the acquittee. Any separate examination report shall be filed with the court within thirty days of the filing with the court of the initial examination report by the superintendent or said commissioner.

"(d) The court shall commence a hearing within fifteen days of its receipt of any separate examination report or if no notice of intent to perform a separate examination has been filed under subsection (c) of this section, within twenty-five days of the filing of such initial examination report.

"(e) At the hearing, the court shall make a finding as to the mental condition of the acquittee and, considering that its primary concern is the protection of society, make one of the following orders:

"(1) If the court finds that the acquittee is a person who should be confined

The facts and procedural history of this case are undisputed. On November 10, 1989, the petitioner, William A. Connelly, became involved in an altercation[4] that resulted in his arrest on kidnapping and assault charges. Following his arrest on November 10, 1989, the petitioner was confined at the Newington police

or conditionally released, the court shall order the acquittee committed to the jurisdiction of the board and either confined in a hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation, for custody, care and treatment pending a hearing before the board pursuant to section 17a-583; provided (A) the court shall fix a maximum term of commitment, not to exceed the maximum sentence that could have been imposed if the acquittee had been convicted of the offense, and (B) if there is reason to believe that the acquittee is a person who should be conditionally released, the court shall include in the order a recommendation to the board that the acquittee be considered for conditional release pursuant to subdivision (2) of section 17a-584; or

"(2) If the court finds that the acquittee is a person who should be discharged, the court shall order the acquittee discharged from custody.

"(f) At the hearing before the court, the acquittee shall have the burden of proving by a preponderance of the evidence that he is a person who should be discharged.

"(g) An order of the court pursuant to subsection (e) of this section may be appealed by the acquittee or the state's attorney to the Appellate Court. The court shall so notify the acquittee.

"(h) During any term of commitment to the board, the acquittee shall remain under the jurisdiction of the board until discharged by the court pursuant to section 17a-593. Except as provided in subsection (c) of said section, the acquittee shall be immediately discharged at the expiration of the maximum term of commitment.

"(i) On committing an acquittee to the jurisdiction of the board, the court shall advise the acquittee of the right to a hearing before the board in accordance with section 17a-583."

In 1989, when the petitioner allegedly committed the crimes for which he was acquitted and, in 1990, when the petitioner was acquitted by reason of lack of capacity due to mental disease or defect, § 17a-582 was codified at General Statutes (Rev. to 1989) § 17-257c. The provisions of § 17-257c were transferred to § 17a-582 in 1991. Although § 17a-582 was subject to technical amendments in 1995; see Public Acts 1995, No. 95-257, §§ 11, 48; those amendments have no bearing on the merits of this appeal. For convenience, we refer to the current revision of § 17a-582.

[4] For a more elaborate account of the facts giving rise to the charges in this case, see *Connelly* v. *Commissioner of Correction*, 258 Conn. 374, 376–77, 780 A.2d 890 (2001).

department until November 13, 1989, at which time he was transferred to the custody of the respondent, the commissioner of correction (commissioner). The petitioner remained in the custody of the commissioner, in lieu of bail, until April 20, 1990. On that date, the petitioner, who had been charged with two counts of kidnapping in the second degree in violation of General Statutes (Rev. to 1989) § 53a-94[5] and two counts of assault in the second degree in violation of General Statutes (Rev. to 1989) § 53a-60,[6] was tried to the court, *Dunn, J.,* and found not guilty by reason of lack of capacity due to mental disease or defect. See General Statutes § 53a-13.[7] The petitioner was transferred to Whiting Forensic Institute (Whiting) in Middletown for an examination pursuant to what is now § 17a-582 (a). On October 26, 1990, following the completion of that examination, the petitioner was committed by the court, *Holzberg, J.,* to the custody of the commissioner of mental health for a period of ten years, subject to periodic review by the psychiatric security review board. Judge Holzberg directed that the petitioner be confined at Whiting. See General Statutes § 17a-599.[8]

---

[5] General Statutes (Rev. to 1989) § 53a-94 provides in relevant part: "(a) A person is guilty of kidnapping in the second degree when he abducts another person. . . ."

" 'Abduct' means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation." General Statutes § 53a-91 (2).

[6] General Statutes (Rev. to 1989) § 53a-60 provides in relevant part: "(a) A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person; or (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (3) he recklessly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument . . . ."

[7] See footnote 1 of this opinion.

[8] General Statutes § 17a-599 provides: "Confinement under conditions of maximum security. At any time the court or the board determines that the acquittee is a person who should be confined, it shall make a further determination of whether the acquittee is so violent as to require confine-

In 1993, the petitioner filed a petition for a writ of habeas corpus seeking to have the habeas court vacate the trial court's judgment of acquittal by reason of lack of capacity due to mental disease or defect. On August 16, 1994, the habeas court, *Higgins, J.*, granted the petition on the ground that the record did not affirmatively establish that the petitioner had been advised of his right to a jury trial. The habeas court vacated the trial court's judgment of acquittal by reason of lack of capacity due to mental disease or defect and issued a writ of habeas corpus. On September 9, 1994, the petitioner was transferred from Whiting to the custody of the commissioner. In January, 1995, the petitioner was retried by a jury before *Scheinblum, J.*, on the same charges of which he previously had been acquitted by reason of lack of capacity due to mental disease or defect, namely two counts each of kidnapping in the second degree and assault in the second degree. On January 26, 1995, the petitioner was found guilty on all counts, and, on March 3, 1995, the trial court sentenced him to a total effective sentence of forty years imprisonment. The judgment of the trial court was affirmed by the Appellate Court. *State* v. *Connelly*, 46 Conn. App. 486, 513, 700 A.2d 694 (1997), cert. denied, 244 Conn. 907, 908, 713 A.2d 829, cert. denied, 525 U.S. 907, 119 S. Ct. 245, 142 L. Ed. 2d 201 (1998).

---

ment under conditions of maximum security. Any acquittee found so violent as to require confinement under conditions of maximum security shall not be confined in any hospital for psychiatric disabilities or placed with the Commissioner of Mental Retardation unless such hospital or said commissioner has the trained and equipped staff, facilities or security to accommodate such acquittee."

In 1989 and 1990, § 17a-599 was codified at General Statutes (Rev. to 1989) § 17-257t. Section 17-257t was transferred to § 17a-599 in 1991. Although § 17a-599 was amended in 1995; see Public Acts 1995, No. 95-257, § 48; that amendment has no bearing on the merits of this appeal. For convenience, we refer to the current revision of § 17a-599.

Thereafter, the petitioner filed a petition for a writ of habeas corpus, in which he claimed, inter alia, that the commissioner improperly had refused to grant him credit toward his forty year sentence for the period of time from April 20, 1990, to September 9, 1994, during which he was confined at Whiting pursuant to the first trial court's order of commitment following his insanity acquittal. In particular, the petitioner claimed that he was entitled to such credit under § 53a-38 (c), which provides that, when a sentence has been vacated and a new sentence has been imposed for the same offense or for an offense based on the same act, the time served under the vacated sentence shall be credited against the new sentence. The petitioner further claimed that the commissioner improperly denied him good time credit under General Statutes § 18-7a (c)[9] for the time that he was confined at Whiting. Finally, the petitioner asserted that the commissioner improperly had refused to grant him presentence confinement credit under General Statutes § 18-98d (a)[10] for the three days that he

---

[9] General Statutes § 18-7a (c) provides in relevant part: "Any person sentenced to a term of imprisonment for an offense committed on or after July 1, 1983, may, while held in default of bond or while serving such sentence, by good conduct and obedience to the rules which have been established for the service of his sentence, earn a reduction of his sentence as such sentence is served in the amount of ten days for each month served and pro rata for a part of a month served of a sentence up to five years, and twelve days for each month served and pro rata for a part of a month served for the sixth and each subsequent year of a sentence which is more than five years. . . ."

Although § 18-7a (c) was amended in 1997; see Public Acts 1997, No. 97-169; that amendment is not relevant to the merits of this appeal. Thus, we refer to the current revision for convenience.

[10] General Statutes § 18-98d (a) provides in relevant part: "Any person who is confined to a community correctional center or a correctional institution for an offense committed on or after July 1, 1981, under a mittimus or because such person is unable to obtain bail or is denied bail shall, if subsequently imprisoned, earn a reduction of his sentence equal to the number of days which he spent in such facility from the time he was placed in presentence confinement to the time he began serving the term of imprisonment imposed; provided (1) each day of presentence confinement shall be counted only once for the purpose of reducing all sentences imposed

was incarcerated at the Newington police department immediately following his arrest.

The habeas court, *Hon. Thomas H. Corrigan*, judge trial referee, agreed with the petitioner's claims and ordered the commissioner to credit the petitioner's sentence for all of the time to which he claimed he was entitled under §§ 53a-38 (c), 18-7a (c) and 18-98d (a).[11] The commissioner appealed from the judgment of the habeas court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the commissioner claims that the habeas court erroneously concluded that the petitioner was entitled to time credited toward his forty year sentence. We conclude that the petitioner is entitled to credit toward his sentence for the time that he was confined at Whiting and, in addition, that he is eligible for consideration by the commissioner as to whether he is entitled to statutory good time credit in connection with his confinement there. We also conclude, however, that the petitioner is not entitled to presentence confinement credit toward his sentence for the three days that he was confined at the Newington police department following his arrest.[12]

---

after such presentence confinement; and (2) the provisions of this section shall only apply to a person for whom the existence of a mittimus, an inability to obtain bail or the denial of bail is the sole reason for his presentence confinement, except that if a person is serving a term of imprisonment at the same time he is in presentence confinement on another charge and the conviction for such imprisonment is reversed on appeal, such person shall be entitled, in any sentence subsequently imposed, to a reduction based on such presentence confinement in accordance with the provisions of this section. . . ."

[11] The habeas court concluded that, under the circumstances, "it is neither rational nor sensible to withhold" such credit from the petitioner.

[12] The commissioner represents that he has granted the petitioner credit toward his forty year sentence for the time that he was confined in the commissioner's custody, including the following: (1) from November 13, 1989, the date of the petitioner's arraignment, to April, 20, 1990, the date on which the first trial court rendered a judgment of acquittal by reason of

The petitioner's claims raise issues of statutory construction, over which our review is plenary. See, e.g., *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 26, 717 A.2d 77 (1998). Our resolution of those claims is governed by well established principles. "[I]t is axiomatic that the process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *State* v. *Ledbetter*, 240 Conn. 317, 327–28, 692 A.2d 713 (1997). Guided by these principles, we turn, first, to the issue of whether the petitioner is entitled to credit, under § 53a-38 (c), for the time that he was confined at Whiting following his insanity acquittal.

As with all issues of statutory construction, we begin with the pertinent statutory language. General Statutes § 53a-38 (c) provides: "When a sentence of imprisonment that has been imposed on a person is vacated and a new sentence is imposed on such person for the same offense or for an offense based on the same act, the new sentence shall be calculated as if it had commenced at the time the vacated sentence commenced, and all

lack of capacity due to mental disease or defect and on which the petitioner was transferred to Whiting from the custody of the commissioner; and (2) from September 9, 1994, the date that the petitioner was transferred from Whiting to the custody of the commissioner following the first habeas court's issuance of a writ of habeas corpus, to the present day. Consequently, the parties' disagreement is limited to whether the petitioner is entitled to credit for: (1) the three days that he was confined at the Newington police department from November 10, 1989, to November 13, 1989; (2) the period of time between April 20, 1990, and September 9, 1994, when he was confined at Whiting; and (3) good time for the period that he was confined at Whiting.

time served under or credited against the vacated sentence shall be credited against the new sentence." Under its plain terms, § 53a-38 (c) applies to a vacated *sentence of imprisonment*; it contains no mention of a commitment order issued in connection with a vacated insanity acquittal. Although there is no dispute that both of the petitioner's trials involved the same conduct and the same charges, the commitment order issued by Judge Holzberg as a result of the petitioner's insanity acquittal is not a "sentence." Indeed, we consistently have noted the "fundamental distinction between . . . incarceration pursuant to a criminal sentence and . . . commitment following an insanity acquittal"; *Copeland* v. *Warden*, 225 Conn. 46, 49, 621 A.2d 1311 (1993); accord *Connelly* v. *Commissioner of Correction*, 258 Conn. 374, 388, 780 A.2d 890 (2001); because commitment, unlike a criminal sentence, is not a sanction or penalty but, rather, a vehicle pursuant to which the court can ensure that a defendant who has engaged in unlawful conduct but has been found not guilty by reason of lack of capacity due to mental disease or defect will receive treatment for his or her mental disease or defect. See *Connelly* v. *Commissioner of Correction*, supra, 387. Strict application of the literal language of § 53a-38 (c), therefore, would preclude a determination that the petitioner is entitled to credit for the time that he was confined at Whiting following his insanity acquittal and subsequent commitment pursuant to § 17a-582.

For several reasons, however, we are persuaded that such a strict construction of § 53a-38 (c) is not warranted. First, it is by no means clear that the legislature, in enacting § 53a-38 (c), contemplated the scenario presented by this case. Because a defendant bears the burden of establishing the affirmative defense of lack of capacity due to mental disease or defect under § 53a-13; see footnote 1 of this opinion; and because proof of that affirmative defense relieves the defendant of

criminal responsibility for his unlawful conduct, it is rare for an insanity acquittee to challenge his or her acquittal; even rarer is the case in which that challenge is successful, as in the present case. It, therefore, is highly unlikely that the legislature anticipated such a situation when it enacted § 53a-38 (c).[13]

Furthermore, we believe that a literal interpretation of § 53a-38 (c) would result in an inequity that the legislature likely would not have intended. Although the *purpose* of an order of commitment issued as a result of an insanity acquittal is significantly different from that of a prison sentence imposed as a result of a criminal conviction; see, e.g., *Connelly* v. *Commissioner of Correction*, supra, 258 Conn. 387; the *effect* of such a commitment on the acquittee is no less a deprivation of liberty than that of a prison sentence. Indeed, the United States Supreme Court has aptly characterized the involuntary confinement for treatment of mental illness as a "massive curtailment of liberty." *Humphrey* v. *Cady*, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972); accord *Vitek* v. *Jones*, 445 U.S. 480, 491, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980). In fact, "[t]he United States Supreme Court has recognized involuntary commitment to a mental institution . . . as involving more than a loss of freedom from confinement . . . due to its stigmatizing consequences, and the potential exposure to invasive, compulsory medical and psychiatric treatment." (Citation omitted; internal quotation marks omitted.) *State* v. *Metz*, 230 Conn. 400, 412–13, 645 A.2d 965 (1994), quoting *Vitek* v. *Jones*, supra, 492.[14] We note, moreover, that the loss of liberty is all the more profound when the institution to which the patient has

---

[13] We note that there is nothing in the pertinent legislative history to suggest a contrary conclusion.

[14] In *Vitek* v. *Jones*, supra, 445 U.S. 494, the court held that the involuntary transfer of a prisoner to a mental hospital implicates a liberty interest that is protected by the due process clause of the fourteenth amendment to the United States constitution.

been committed is a maximum security facility such as Whiting. See footnote 8 of this opinion and accompanying text.

For these reasons, "our state law has, for certain purposes, likened [insanity] acquittees to prisoners who have been transferred to a mental hospital during the pendency of their jail sentence. We have noted that both classes of hospital inmates are being deprived of their liberty primarily for the protection of society . . . and [that] both have the same need for treatment." (Internal quotation marks omitted.) *State* v. *Metz*, supra, 230 Conn. 417. Moreover, a sentenced prisoner who has been transferred from a penal institution to a mental health facility such as Whiting receives full credit toward his sentence for the time that he is confined at that facility. See generally, e.g., *Murray* v. *Lopes*, 205 Conn. 27, 529 A.2d 1302 (1987). Indeed, a defendant convicted of a crime who is found to be suffering from a psychiatric disability may be transferred to Whiting by the commissioner immediately after sentencing and, depending upon his response to treatment, may be required to serve the balance of his sentence there. At the very least, it is troubling that, under the interpretation of § 53a-38 (c) advanced by the commissioner, a sentenced defendant who is transferred to Whiting will receive full credit for all of the time that he is confined at Whiting whereas the petitioner will receive no credit for any time that he was confined there even though the petitioner's confinement at Whiting, like that of the hypothetical prisoner who serves all or part of his sentence at Whiting, was the direct result of his prosecution for crimes that he ultimately was found guilty of committing.[15]

---

[15] Of course, the state may petition the Probate Court for the involuntary civil commitment of a person with a psychiatric disability who is a danger to himself. See generally General Statutes §§ 17a-497 through 17a-499. In such circumstances, the state is required to make that predicate showing by clear and convincing evidence. See General Statutes § 17a-498 (c). In the case of an insanity acquittee, however, the acquittee bears the burden of

"[W]e will not undertake an examination of [a statutory provision] with blinders on regarding what the legislature intended [it] to mean. . . . In interpreting a statute, common sense must be used . . . . The law favors rational and sensible statutory construction. . . . The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. . . . When two constructions are possible, courts will adopt the one which makes the [statute] effective and workable, and not one which leads to difficult and possibly bizarre results. . . . We have long followed the guideline that [t]he intent of the lawmakers is the soul of the statute, and the search for this intent we have held to be the guiding star of the court. It must prevail over the literal sense and the precise letter of the language of the statute. . . . When one construction leads to public mischief which another construction will avoid, the latter is to be favored unless the terms of the statute absolutely forbid [it]." (Citations omitted; internal quotation marks omitted.) *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 306–307, 732 A.2d 144 (1999).

Section 53a-38 (c) contains no express prohibition against an award of credit when the confinement following a first trial resulted from a commitment order issued

establishing by a preponderance of the evidence that he or she should be released prior to the expiration of the maximum term of commitment established pursuant to § 17a-582 (e) (1) (A). See General Statutes §§ 17a-582 (f), 17a-593 (f). Thus, the consequences of being subject to commitment pursuant to § 17a-582 as opposed to ordinary civil commitment are significantly more far-reaching. That difference is justified on the ground that the insanity acquittee has been found, beyond a reasonable doubt, to have committed a criminal act. *State* v. *Metz*, supra, 230 Conn. 417. Therefore, under our statutory scheme, the fact that an insanity acquittee has been found to have engaged in criminal conduct is a critical factor in regard to the determination of whether the acquittee will released prior to the expiration of his maximum term of commitment.

as a result of a judgment of acquittal by reason of insanity that subsequently is vacated and not from a sentence imposed after a subsequently vacated conviction. Moreover, we believe that the fundamental purpose of § 53a-38 (c) is to afford an inmate credit toward his current sentence for the time that he was confined as a direct result of his initial trial on the same charges.[16] It would be consistent with this basic statutory purpose to award the petitioner credit toward his forty year sentence for the period of time that he was confined at Whiting as a result of his acquittal by reason of insanity on the same charges for which he ultimately was convicted. We also believe that it is the fairer, more reasonable construction of § 53a-38 (c), and, therefore, the one that the legislature most likely intended. Accordingly, we agree with the habeas court that the petitioner is entitled to credit, under § 53a-38 (c), for the time that he was confined at Whiting, specifically, the period of time between April 20, 1990, and September 9, 1994.

The petitioner also is eligible to be considered for an award of good time credit under § 18-7a (c) for the duration of his commitment to Whiting because any time for which credit is to be granted under § 53a-38

---

[16] We acknowledge that, as the commissioner asserts, constitutional principles of double jeopardy require that a defendant be given credit toward his sentence for any time that he already has served in connection with a vacated sentence for the same charges; see, e.g., North Carolina v. Pearce, 395 U.S. 711, 718, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); Moscone v. Manson, 185 Conn. 124, 131, 440 A.2d 848 (1981); and that § 53a-38 (c) was enacted with the intention of implementing that mandate. See Sutton v. Lopes, 202 Conn. 343, 348, 521 A.2d 147 (1987). We also acknowledge that those principles are inapplicable in the present case because the petitioner's first trial did not result in a conviction. We are not persuaded, however, that the legislature necessarily intended that § 53a-38 (c) would apply only to those cases in which credit is constitutionally required. Although that class of cases comprises the vast majority of cases to which § 53a-38 (c) is applicable, we do not think that that fact alone militates against applying § 53a-38 (c) in the highly unusual circumstances of the present case.

(c) is treated as if that time actually had been served in connection with the sentence imposed after a retrial for the same charges. Consequently, on remand, the habeas court shall require the commissioner to determine whether the petitioner's conduct at Whiting merits an award of good time credit pursuant to § 18-7a (c).[17]

Finally, we must decide whether the petitioner also is entitled to presentence confinement credit toward his sentence for the three days that he was incarcerated at the Newington police department after his arrest. General Statutes § 18-98d (a), upon which the petitioner relies, provides in relevant part that presentence confinement credit shall be granted to any person who commits a crime on or after July 1, 1981, and who is "confined to a *community correctional center or a correctional institution* . . . under a mittimus or because such person is unable to obtain bail or is denied bail . . . ." (Emphasis added.) The Newington police department is neither a community correctional center

---

[17] Insofar as the award of good time credit under § 18-7a (c) depends upon good conduct, the awarding of such credit is discretionary with the commissioner. Thus, any decision regarding an award of good time credit necessarily must be made, in the first instance, by the commissioner. Because we do not know whether the petitioner's conduct at Whiting merits an award of good time credit under any applicable rule or policy of the department of correction, we express no view as to whether the petitioner should receive such credit. We conclude only that the petitioner is *eligible* for consideration by the commissioner as to whether the petitioner's conduct at Whiting merits an award of good time credit under § 18-7a (c) for the duration of the petitioner's confinement at Whiting just as if he had been a sentenced prisoner who was transferred to Whiting to serve some or all of his sentence there.

We note that, insofar as the record reflects, the commissioner never has claimed that the petitioner is not entitled to good time credit under § 18-7a (c) on the ground that his conduct at Whiting would preclude an award thereof. Nevertheless, in light of the discretionary nature of good time credit, we conclude that the commissioner should be afforded an opportunity to determine whether the petitioner is entitled to such credit under applicable rules and regulations. Therefore, to the extent that the judgment of the habeas court *directs* the commissioner to award the petitioner good time credit under § 18-7a (c), that portion of the judgment must be reversed.

nor a correctional institution. See General Statutes (Rev. to 1989) § 1-1 (w).[18] If the legislature had intended to grant credit for presentence confinement in a local or municipal jail or police department, it easily could have expressed that intent by omitting "community correctional center or a correctional institution" from § 18-98d (a). See, e.g., *State* v. *Davis*, 255 Conn. 782, 791, 772 A.2d 559 (2001). Indeed, the statutory interpretation urged by the petitioner would require us to read those words out of § 18-98d (a). We will not construe § 18-98d (a) in such a manner, at least in the absence of a compelling reason to do so, because "[i]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous."[19] (Internal

---

[18] General Statutes (Rev. to 1989) § 1-1 (w) provides: " 'Correctional institutions' means the Connecticut Correctional Institution, Somers; the Connecticut Correctional Institution, Enfield-Medium; the Carl Robinson Correctional Institution, Enfield; the Connecticut Correctional Institution, Niantic; the John R. Manson Youth Institution, Cheshire; the Connecticut Correctional Center, Cheshire; the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and Montville and the Connecticut Correctional Camp, Portland. Wherever in the general statutes, the words 'State Prison', appear, they shall be construed to mean the Connecticut Correctional Institution, Somers; 'State Prison for Women' shall be construed to mean the maximum security division of the Connecticut Correctional Institution, Niantic; 'jails' or 'jail' shall be construed to mean the Community Correctional Centers, Bridgeport; Brooklyn; Haddam; Hartford; Litchfield; New Haven; and Montville and those portions of the Connecticut Correctional Institution, Niantic, used to detain female persons awaiting disposition of pending charges or to confine female persons convicted of, or who plead guilty to, the commission of misdemeanors and who have been sentenced to community correctional centers or any of them, as the case may be; 'Connecticut Reformatory' shall be construed to mean the John R. Manson Youth Institution, Cheshire; and 'The Connecticut State Farm for Women' shall be construed to mean the Connecticut Correctional Institution, Niantic."

[19] We note that, in light of the short period of time that a defendant may be subject to pretrial confinement at a facility, such as a local police department, that is not operated by the department of correction; see, e.g., General Statutes § 54-1g; the legislature reasonably may have determined

quotation marks omitted.) *Hartford Hospital* v. *Dept. of Consumer Protection,* 243 Conn. 709, 718, 707 A.2d 713 (1998).

The petitioner contends that interpreting § 18-98d (a) as written would violate double jeopardy principles. In particular, he maintains that the double jeopardy clause of the fifth amendment to the United States constitution, as applied to the states through the fourteenth amendment,[20] requires that he be granted credit for all of the time that he was confined prior to trial, including the three days that he was incarcerated at the Newington police department. This claim is without merit. For purposes of the petitioner's claim under § 18-98d (a), principles of double jeopardy mandate only that "punishment already exacted must be fully credited in imposing sentence upon a new conviction for the same offense." (Internal quotation marks omitted.) *North Carolina* v. *Pearce,* 395 U.S. 711, 718–19, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); see also footnote 16 of this opinion. In other words, "in computing the sentence imposed after conviction upon retrial, credit must be given for time served *under the original sentence.*" (Emphasis added.) *North Carolina* v. *Pearce,* supra, 716–17. Under § 18-98d (a), a defendant is not entitled to any credit toward his original sentence for presentence confinement in a local jail or police department and that presentence confinement time does not comprise any of the "time served under the original sentence." Id., 717. Consequently, the denial of presentence confinement credit for such time upon conviction after retrial simply does not implicate the protections of the double jeopardy clause.

that it would be administratively inefficient and, therefore, imprudent, to require the commissioner to ascertain and credit such time against any sentence ultimately imposed on a defendant.

[20] E.g., *Monge* v. *California,* 524 U.S. 721, 727, 118 S. Ct. 2246, 141 L. Ed. 2d 615 (1998); *Benton* v. *Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969).

The petitioner has failed to articulate any reason to ignore the unambiguous language of § 18-98d (a) limiting credit for presentence confinement to those persons who have been confined, prior to sentencing, at a "community correctional center or a correctional institution . . . ." General Statutes § 18-98d (a). We, therefore, reject the petitioner's claim that he is entitled to presentence credit for the three days that he was confined at the Newington police department.

The judgment is affirmed insofar as the habeas court concluded that the petitioner is entitled to credit under § 53a-38 (c) and insofar as the habeas court concluded that the petitioner is eligible for consideration as to whether he is entitled to good time credit under § 18-7a (c). The judgment is reversed insofar as the habeas court concluded that the petitioner is entitled to presentence confinement credit under § 18-98d (a) and insofar as the habeas court concluded that the petitioner is entitled to good time credit under § 18-7a (c) and the case is remanded to that court with direction to order the commissioner to determine whether, in light of the petitioner's conduct while the petitioner was confined at Whiting, he is entitled to good time credit under § 18-7a (c) for that period of confinement.[21]

In this opinion the other justices concurred.

---

[21] See footnote 17 of this opinion.

