BARRINGTON LINDO *v.* GARRELL MULLANEY, SUPERINTENDENT OF HEALTH, CONNECT-
ICUT VALLEY HOSPITAL
(AC 22681)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued March 20—officially released August 19, 2003

*Deborah G. Stevenson,* special public defender, for the appellant (petitioner).

*James A. Killen, Sr.,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Donna Mambrino,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HENNESSY, J. The petitioner, Barrington Lindo, appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus in which he claimed that he had been denied the effective assistance of counsel. On appeal, the petitioner claims that the court improperly (1) failed to conclude that he was denied effective assistance of counsel under the test enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), (2) failed to consider expert testimony concerning his counsel's allegedly deficient performance and (3) concluded that the petitioner was not prejudiced in his habeas corpus case because the records from his original trial had been destroyed. We affirm the judgment of the habeas court.

The court found the following relevant facts. The petitioner was a defendant in a criminal case[1] in which he was represented by attorney Lawrence S. Hopkins of the public defender's office. Prior to trial, the prosecutor offered the petitioner, in exchange for his pleas of guilty, a sentence of twelve years, suspended after six years.[2] Hopkins discussed the offer with the petitioner and advised him about the defense of mental disease or defect. The petitioner decided to reject the offer and to proceed to trial with the affirmative defense of mental disease or defect. After trial, the petitioner was found not guilty by reason of mental disease or defect and acquitted on the charges of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), and burglary in the first degree in violation of General Statutes § 53a-101.

[1] *State* v. *Lindo*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 382574 (December 20, 1990).

[2] The petitioner's and the state's recitation of the facts as to the charges and plea negotiations cannot be verified because the criminal trial transcripts and records are unavailable. See part III.

On March 15, 1991, the trial court, pursuant to General Statutes § 17a-582 et seq., committed the petitioner to the jurisdiction of the psychiatric security review board (board) for confinement in a hospital for psychiatric disabilities for a period of time not to exceed ten years. The petitioner has remained at the Whiting Forensic Division of Connecticut Valley Hospital (Whiting) pursuant to the court order. Approximately ten years after being committed, the petitioner filed a petition for writ of habeas corpus on May 9, 2000, and an amended petition on August 23, 2000.

Before addressing the petitioner's claims, we will address whether this court properly can grant the relief sought by the petitioner. The petitioner's prayer for relief asks that a new trial be ordered and that the court "release [him] from his confinement or transfer him to a correctional institution for subsequent discharge . . . ." The request for a new trial is unusual considering the fact that the petitioner was acquitted of the charges against him, albeit by reason of mental disease or defect, and his term of imprisonment as ordered by the court has been completed. "[I]t is rare for an insanity acquittee to challenge his or her acquittal; even rarer is the case in which that challenge is successful . . . ." *Connelly* v. *Commissioner of Correction*, 258 Conn. 394, 405, 780 A.2d 903 (2001). The petitioner, however, does have a right to request a new trial and risk a conviction. See id., 400. The time the petitioner has spent in confinement would be credited toward any new sentence that could be rendered if the petitioner were found guilty after a new trial. See id., 408.

I

Having determined that the petitioner could be granted a new trial, we now turn to his claims on appeal. The petitioner's first claim is that the court improperly found that his defense counsel did not render ineffective

assistance as set forth in *Strickland* v. *Washington,* supra, 466 U.S. 687.

"[T]he United States Supreme Court adopted a two part analysis for claims of ineffective assistance of counsel. Under *Strickland,* the petitioner must show that: (1) defense counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for defense counsel's deficient representation, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Jean-Jacques* v. *Commissioner of Correction,* 73 Conn. App. 742, 746, 809 A.2d 541 (2002).

"Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Figueroa* v. *Commissioner of Correction,* 74 Conn. App. 352, 354, 812 A.2d 164 (2002), cert. denied, 262 Conn. 954, 818 A.2d 780 (2003).

A

In support of his claim that defense counsel's representation fell below an objective standard of reasonableness, the petitioner alleges that counsel assured him that if he were successful in going forward with the trial and the defense of mental disease or defect, his commitment period *could* be only two years.[3] The

---

[3] General Statutes § 17a-585 provides in relevant part: "The board shall conduct a hearing and review the status of the acquittee not less than once every two years. . . ." See also *Franklin* v. *Berger,* 211 Conn. 591, 597–601, 560 A.2d 444 (1989), for a thorough examination of the procedure employed regarding an acquittee found not guilty by reason of mental disease or defect.

petitioner further contends that counsel never informed him that he could be confined indefinitely. The petitioner alleges that as a result of his having followed counsel's advice to use the defense of mental disease or defect instead of accepting the plea bargain offered by the prosecutor, he continues to be held at Whiting instead of having been released at the end of six years.[4]

Hopkins testified that he told the petitioner that his condition would be reviewed periodically and that he *could, if his condition improved,* be released in two years. He also testified that he did not explain to the petitioner that there was a possibility that he could be held beyond the ten year maximum confinement, stating: "I'm sure I never explained it to him after that because I possibly never saw him after that term was imposed."

Hopkins testified that he explained that the petitioner's options prior to trial were either to take the offer of twelve years incarceration, suspended after six years, or to go to trial on the merits. The petitioner decided to refuse the state's offer because he believed that accepting the offer would involve too long a sentence. The petitioner, after discussing the option of a trial with Hopkins, agreed with his counsel that under the facts of the case, he likely would be found guilty and exposed to a serious sentence. They agreed that the best option was to proceed to trial and to rely on the defense of mental disease or defect.

The petitioner further argues that defense counsel, being aware of the petitioner's mental history and voluntary intoxication at the time of the assault, should have

---

[4] During the approximately ten years that the petitioner has been at Whiting, he has had a review and hearing pursuant to General Statutes §§ 17a-585 and 17a-584 periodically to determine whether he would be a danger to the public or to himself if released. The board has not recommended his release.

used those factors at trial to negate the element of specific intent. The petitioner argues, in the alternative, that counsel should have advised him to agree to the plea offer under which he would have served less time.[5]

Hopkins testified that he urged the petitioner to consider the plea offer, but the petitioner refused. Hopkins further explained that because the petitioner had seven previous convictions for crimes of violence and because the evidence clearly indicated that the petitioner had committed the unprovoked vicious attack of which he was accused, relying on a defense that he was not the perpetrator when he was well known to his victim, who had identified him, would have resulted in what counsel termed "a serious sentence." The court was free to accept the reasoning and testimony of defense counsel, and to reject the petitioner's claim that he was misadvised. See *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376, cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541 (1996).

The facts of this case are very similar to those addressed by our Supreme Court in *Duperry* v. *Solnit*, 261 Conn. 309, 333–36, 803 A.2d 287 (2002). In *Duperry*, the petitioner's attorney testified that he had not informed the petitioner that he could be held beyond the maximum term of confinement if he were found not guilty by reason of mental disease or defect.[6] Id.,

---

[5] The court found that the petitioner had had periodic reviews of his mental condition and has not been released because the board could not find that if released, he would *not* be a danger to the public or to himself.

[6] In *Duperry*, the petitioner's attorney stated that the petitioner "might spend less time in confinement" if he were found not guilty by reason of mental disease or defect. *Duperry* v. *Solnit*, supra, 261 Conn. 334. In this appeal, Hopkins told the petitioner that he could, if his condition improved, be released in two years. Under the facts of this case, we do not find a difference between those statements in terms of the information passed on to the client to make an informed decision concerning whether to accept a plea agreement offered by the state or to proceed to trial.

334. Our Supreme Court held that the attorney's performance did not fall below the objective standard of reasonableness and that "the petitioner's belief that he would spend less time in confinement by pleading not guilty and pursuing a mental health defense rather than by pleading guilty was based on the petitioner's own conjecture and not on the advice of his attorney." Id., 336.

In the case before us, the court concluded "after a full hearing based on the preponderance of the credible, reliable, relevant and legally admissible evidence, and the reasonable, logical and lawful inferences to be drawn therefrom, [that the petitioner's attorney had] rendered effective assistance of counsel to the petitioner and met the standard of reasonable competence of a criminal defense lawyer of ordinary skill and training in the criminal law." Under the circumstances as presented here and on the basis of our Supreme Court's decision in *Duperry* v. *Solnit*, supra, 261 Conn. 309, we conclude that the court correctly determined that the petitioner was not deprived of effective assistance of counsel.

B

The petitioner further argues that the court ignored his claim at the habeas hearing that defense counsel had conducted an inadequate investigation during the petitioner's criminal trial in that counsel failed to inquire as to whether the petitioner was intoxicated at the time of the incident. The petitioner argues that specific intent is an essential element of both crimes with which he was charged and that if he had shown that he was intoxicated at the time of the incident, he could have argued at trial the negation of specific intent.

"A criminal defendant's intoxication is relevant to the determination of his capacity to form a specific intent to commit a crime . . . but it is not dispositive

of the issue." (Citations omitted.) *State* v. *Vinal,* 198 Conn. 644, 658–59, 504 A.2d 1364 (1986). Intoxication, as used in General Statutes § 53a-7, "means a substantial disturbance of mental or physical capacities resulting from the introduction of substances into the body." Defense counsel testified that in preparing the petitioner's case, he reviewed the report of Donald R. Grayson, a psychiatrist, that contained a detailed mental health history of the petitioner. We find nothing in that report that would have led petitioner's trial counsel to believe that the petitioner had a problem with alcohol.[7] Although the petitioner testified at the habeas trial that he had consumed alcohol on the date of the assault and burglary, he never mentioned that fact to his attorney. There was no evidence of the amount of alcohol consumed, the type of alcohol consumed or if the petitioner was affected by what he consumed. The petitioner does not claim that he was intoxicated at the time of the alleged incident and testified at the habeas trial: "Yes, I did have alcohol. Yes." There was scant questioning of the petitioner regarding his use of alcohol on the day of the assault and burglary; there was no examination of the petitioner by the state on that subject; there were no questions posed at the habeas hearing asking the petitioner's defense counsel about the absence of discovery concerning that issue, and there was no motion for articulation filed to address the fact that the habeas court did not mention the discovery issue in its opinion. It was not so much that the court ignored the discovery issue, but rather that the petitioner did so. There was little mention of the use of alcohol by the petitioner, and to require the court to treat his statement as support for the claim is without merit.

---

[7] Grayson's report, dated November 16, 1990, contains the following: "Regarding [the petitioner's] alcohol history, he indicated that he had drank 'a lot in high school,' but now only has an occasional beer and occasionally a wine cooler. He denied ever having had blackouts, [charges against him of driving while under the influence of intoxicating liquor] or other problems with alcohol."

It is for the court as the finder of fact to determine the credibility of and the effect to be given to the testimony. *Doehrer* v. *Commissioner of Correction*, 68 Conn. App. 774, 785, 795 A.2d 548, cert. denied, 260 Conn. 924, 797 A.2d 520 (2002). We conclude that the court applied the test enunciated in *Strickland* and reasonably could have determined that the petitioner's counsel conducted an adequate investigation.[8]

## II

The petitioner also claims that the court improperly failed to consider expert testimony concerning his counsel's allegedly deficient performance. We do not agree.

The petitioner called as a witness Leon M. Kaatz, an attorney who was qualified as an expert witness. Kaatz testified that the representation by the petitioner's counsel was inappropriate. According to Kaatz, the petitioner's counsel had an obligation to inform the petitioner fully of the consequences of going to trial and using the defense of mental disease or defect, and should not have told the petitioner that if he chose that defense, he would be released in two years. Kaatz relied only on the statements of the petitioner as contained in the petition and his testimony in court. He did not

---

[8] The petitioner alleges that the court improperly failed to make a predicate finding of prejudicial impact. "If . . . the habeas court determines that [the petitioner's counsel's performance] was constitutionally deficient according to the first prong of *Strickland*, it will be necessary for the habeas court to make . . . [a determination as to] whether the petitioner was prejudiced, in accordance with the second prong of *Strickland* . . . ." *Commissioner of Correction* v. *Rodriquez*, 222 Conn. 469, 479, 610 A.2d 631 (1992).

The court, in its memorandum of decision, found that the petitioner's trial counsel rendered effective assistance and had met the standard of reasonable competence of a criminal defense lawyer of ordinary skill and training. On the basis of the fact that the court did not find that the representation by petitioner's trial counsel was unreasonable, there was no need to discuss or to make findings about the prejudice prong of *Strickland*.

interview the petitioner or the petitioner's counsel in arriving at his opinion.

In its decision, the court wrote that after a full hearing, it found that the petitioner's counsel had rendered effective assistance and had met the standard of reasonable competence of a criminal defense lawyer of ordinary skill and training in the criminal law. Contained within the full hearing was the testimony of Kaatz. "It is for the court as the finder of fact to determine the credibility of and the effect to be given to the testimony. . . . It was the court's function to assess the testimony of all the witnesses who testified at the habeas proceeding." (Citation omitted.) Id. We do not conclude that the court ignored the testimony of the petitioner's expert and, therefore, we conclude that the petitioner's claim is without merit.

## III

The petitioner next claims that he was prejudiced by the state's destruction of the records from his criminal trial that could have assisted him in proving his allegations in his petition for a writ of habeas corpus. Specifically, the petitioner claims that he was prejudiced because a reconstruction of the transcript could have revealed the petitioner's history, the state's plea offer and counsel's errors at trial. The petitioner waited nine years before he attempted to obtain the transcripts of his trial. The petitioner testified at trial that the transcript was destroyed pursuant to a judge's order after seven years had passed from the time of trial. The petitioner did not make a motion related to the destruction of the records, nor did he request the habeas court to reconstruct the transcripts of his criminal trial. The petitioner claims that the habeas court, sua sponte, should have ordered a reconstruction of the transcript. The petitioner also argues that this court can review

the issue under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

"In essence, [the petitioner] seeks review in this court under the criteria set out in *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973), as reformulated in *State* v. *Golding* [supra, 213 Conn. 239–40] . . . . The *Evans* standard for appellate review, however, is inappropriate in a habeas corpus proceeding. . . . This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . Although the petitioner's counsel briefly discussed these claims at oral argument in the habeas court, that court neither ruled upon nor decided these claims. Further, the petitioner failed to brief these issues, raise them in his habeas petitions or move for further articulation either in the habeas court or this court to force the habeas court to address these issues. . . . To review the petitioner's claims now would amount to an ambuscade of the [habeas] judge." (Citations omitted; internal quotation marks omitted.) *Copeland* v. *Warden*, 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993).

In addition, the petitioner cannot prevail because the alleged constitutional violation does not exist and his rights have not been violated. See *State* v. *Golding*, supra, 213 Conn. 239–40. "[T]he unavailability of the transcript of [the] proceedings, which has resulted from no fault of the parties, does not warrant a new trial unless those proceedings which might be the basis for a claim of error cannot be sufficiently reconstructed for that purpose." *State* v. *Vitale*, 190 Conn. 219, 225, 460 A.2d 961 (1983); see also *State* v. *DePastino*, 228 Conn. 552, 558, 638 A.2d 578 (1994).

We do not see how a reconstructed transcript would assist the petitioner in his claim that his counsel's per-

formance fell below the objective standard of reasonableness when the trial produced a favorable outcome for the petitioner. The petitioner's primary claim is that his attorney did not inform him that he could be imprisoned beyond the maximum term if found not guilty by reason of mental disease or defect. The attorney acknowledged that point, and the transcript would not yield any information from those privileged conversations between the petitioner and his attorney.

The petitioner in his brief also claims that "the transcript could have revealed errors in the trial going to the issue of effectiveness of counsel such as whether an insanity defense could have been negated by a proper investigation showing intoxication of the petitioner." The transcript, however, would not reveal any details of the petitioner's claim that he was intoxicated at the time of the crime because the trial concerned the petitioner's mental health. A transcript would not assist the petitioner's claim that his attorney did not perform an adequate investigation because the issue of intoxication was not addressed at trial. The petitioner admitted that he did not inform his attorney that he had consumed alcohol, and he does not even claim that he was intoxicated at the time the events were alleged to have taken place.

The petitioner in his brief also claims that the transcript "could have revealed whether, through the report of Dr. Grayson, trial counsel was aware of the petitioner's past history of intoxication and whether counsel used that report effectively to prove insanity or whether counsel should not have attempted to use an insanity defense." Grayson's report was presented to the habeas court and considered by that court. The petitioner's attorney obviously used that report effectively because the petitioner was found not guilty by reason of mental disease or defect. The transcript could add nothing to

the petitioner's claims of ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.